# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. **2:25-MJ-01277** |
| | ) |
| 5563 Lark Sparrow Ct, Jurupa Valley, CA 91752, as described in Attachment A. | ) |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Engaging in the Business of Dealing Firearms Without a License |
| 18 U.S.C. § 933 | Firearms Trafficking |
| 18 U.S.C. § 922(g)(9) | Domestic Violence Misdemeanant in Possession of a Firearm |
| 18 U.S.C. § 922(o) | Possession of a Machinegun |

The application is based on these facts: *See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of_____days *(give exact ending date if more than 30 days*:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Special Agent Victor Muglia*

_____
*Applicant's signature*

Special Agent Victor Muglia
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   03/07/2025_____

_____
*Judge's signature*

City and state: Los Angeles, CA_____

Hon. Pedro V. Castillo, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Cameron C. Vanderwall (x0647)

## **ATTACHMENT A**

PREMISES TO BE SEARCHED

The premises to be searched is located at 5563 Lark Sparrow Ct, Jurupa Valley, CA 91752 (the "SUBJECT PREMISES"). The SUBJECT PREMISES, as depicted in the photograph below, is a two-story, single-family residence, beige in color with a brown roof and a blue front door. The roof has visible solar panels and has two white columns in front of the front door. The residence is located south of Bellegrave Ave, north of limonite Ave, east of the 15 Freeway and west of Wineville Ave. The residence is located at the end of the cul-de-sac facing east. The SUBJECT PREMISES also has the number "5563" above the garage door on the right-hand side.

The search includes all rooms in the SUBJECT PREMISES, including any safes, storage containers, closets, trash bins, attic spaces, or basements; any outbuildings or garages on the SUBJECT PREMISES, including any sheds; and any vehicles parked in the driveway or on the property.



**ATTACHMENT B**

I.  **ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, contraband, fruits, instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the Business of Dealing Firearms Without a License); 18 U.S.C. § 933 (Firearms Trafficking); 18 U.S.C. § 922(g)(9) (Domestic Violence Misdemeanant in Possession of a Firearm); and 18 U.S.C. § 922(o) (Possession of a Machinegun) (the "Subject Offenses"), namely:

a.    Firearms or component parts of firearms ("firearms"), such as uppers, receivers, and shell casings;

b.    Firearm parts and accessories, such as magazines and sights, and ammunition;

c.    Records relating to the purchase, transfer, and sale of firearms, or attempts at the same, such as communications with suppliers, buyers, or co-conspirators, and communications with any prospective suppliers, buyers, or co-conspirators;

d.    Records related to the operation of an unlicensed firearm dealing business, such as evidence of licenses or licensing requirements, advertising materials, and efforts to find new suppliers or buyers;

e.    Records related to the use of online marketplaces for the transfer and sale of firearms;

f.    Records related to interstate travel between California and other states;

g.    Records related to false statements to firearms dealers or suppliers or false statements on forms related to the purchase, sale, storage, or transfer of firearms;

h.    Records reflecting knowledge of federal firearms laws, regulations, and rules;

i.    Records reflecting the identities of individuals to whom firearms were sold or attempted to be sold;

j.    Records relating to the residence of any co-conspirator in the Subject Offenses;

k.    United States currency over $1,000 or bearer instruments worth over $1,000 (including cashier's checks, traveler's checks, certificates of deposit, stock certificates, and bonds) (including the first $1,000), and data, records, documents, or information (including electronic mail, messages over applications and social media, and photographs) pertaining to, obtaining, possessing, using, applications for, or transferring money over $1,000, such as bank account records, cryptocurrency records and accounts;

l.    Records related to efforts to conceal the Subject Offenses;

m.    Records reflecting proceeds from the Subject Offenses or efforts to count, manage, transfer, or launder proceeds;

ii

n.    Records related to communications with co-conspirators in the Subject Offenses, such as communications with actual or prospective suppliers, buyers, couriers, or associates;

o.    Records related to the identities and roles of co-conspirators or aiders and abettors to the Subject Offenses, including calendars, address books, telephone or other contact lists, pay/owe records, distribution or customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when firearms were bought, sold, or otherwise distributed, whether contained in hard copy correspondence, notes, emails, text messages, photographs, videos (including items stored on digital devices), or otherwise;

p.    Records related to the nature and development of the relationships among co-conspirators in and witnesses to the Subject Offenses, such as personal, social, and familial connections, prior dealings, financial compensation, and loans;

q.    Records reflecting efforts to conceal the Subject Offenses or avoid detection by law enforcement;

r.    Records related to motive for the Subject Offenses, including but not limited to communications relating to debts or other financial obligations;

s.   Evidence of efforts to use and use of encrypted applications, programs, and devices;

t.   Records related to the location of other evidence of the Subject Offenses, including but not limited to communications reflecting registration of online accounts potentially containing relevant evidence, use of other communication and shipping platforms, and financial accounts;

u.   Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof;

v.   With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.   evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the attachment of other devices;

iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v. evidence of the times the device was used;

vi. passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii. records of or information about Internet Protocol addresses used by the device; and

ix. records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2. As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3.   As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

## II.   <u>SEARCH PROCEDURE FOR DIGITAL DEVICE(S)</u>

4.   In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location.  The search team shall complete the search as soon as is practicable but not to exceed one year from the date of execution of the warrant.  The

government will not search the digital device(s) and/or forensic image(s) thereof beyond this one-year period without obtaining an extension of time order from the Court.

b.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.    The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the scope of items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of items to be seized.

ii.    The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase," "Griffeye," and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

c.    The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

d.    If the search determines that a digital device does not contain any data falling within the scope of items to

be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

e.  If the search determines that a digital device does contain data falling within the scope of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

f.  If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the scope of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

g.  The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

h.  After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

34.  The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel

assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

35.  During the execution of this search warrant, law enforcement is permitted to: (1) depress VALDES's thumb and/or fingers onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of VALDES's face with his or her eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

36.  The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

## AFFIDAVIT

I, Victor Muglia, being duly sworn, declare and state as follows:

### I.   BACKGROUND OF AFFIANT

1.   I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since January 2024.  I am currently assigned to the Glendale Field Office of the Los Angeles Field Division of ATF, which conducts investigations into violations of federal firearms, explosives, and narcotics laws.  My experience as an ATF SA includes, but is not limited to, conducting physical surveillance, executing search and arrest warrants, and participating in controlled drug/gun purchases using informants. I have experience investigating violations of federal statutes governing firearms and narcotics.  I have also conducted surveillance of individuals trafficking firearms and illegal controlled substances, and persons possessing illegal firearms. As part of my training, I attended the Criminal Investigator and Special Agent Basic Training Academies for ATF at the Federal Law Enforcement Training Center in Glynco, Georgia for approximately 27 weeks.  This training included instruction on federal and state firearms and narcotics laws and regulations.

2.   Prior to being employed with ATF, I was a Border Patrol Agent with the Department of Homeland Security/Customs and Border Protection.  I started my career in February of 2009.

## II. **PURPOSE OF AFFIDAVIT**

3.   This affidavit is made in support of an application for a warrant to search 5563 Lark Sparrow Ct, Jurupa Valley, CA 91752 (the "SUBJECT PREMISES") as described in Attachment A, for the items to be seized described in Attachment B, which are the evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the Business of Dealing Firearms Without a License); 18 U.S.C. § 933 (Firearms Trafficking); 18 U.S.C. § 922(g)(9) (Domestic Violence Misdemeanant in Possession of a Firearm); and 18 U.S.C. § 922(o) (Possession of a Machinegun) (the "Subject Offenses"). Attachments A and B are incorporated herein by reference.

4.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and times are on or about those indicated.

2

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

5.   On or about August 19, 2024, Alfonso VALDES offered to sell firearms to an ATF confidential informant ("CI")[1] via cell phone text messages and pictures.  VALDES sent the CI an image of an AK-47 type pistol with a price via text message.  In a subsequent message, VALDES sent his Instagram username, "@AVSraffles," which the CI agreed to follow.  Upon review of the public profile for "@AVSraffles," I observed that the profile was being used to raffle off various pistols, rifles, large capacity magazines, and other firearm related products.  I also observed VALDES in multiple Instagram videos holding and manipulating the firearms he was raffling off.  VALDES is a prohibited person because he was previously convicted of Battery on Spouse, a violation of California Penal Code 243(e)(1) and a domestic violence misdemeanor.  VALDES also does not hold a Federal Firearms License.

6.   Based on my review of VALDES's public Instagram profile, on January 3, 2025, I applied for a federal warrant to search the contents of VALDES's suspected social media accounts.  On January 14, 2025, the Honorable Alka Sagar, United States Magistrate Judge, Central District of California, issued a warrant in case number 2:25-MJ-00101 authorizing the search of four Meta Platforms, Inc. accounts associated with VALDES.

---

[1] The CI's criminal history includes prior convictions for evading a peace officer and for receiving/possessing an NFA firearm not registered in NFRTR.  The CI agreed to assist law enforcement in exchange for financial compensation.  The CI has also proved reliable information in previous investigations.

7.    A review of VALDES's social media accounts revealed that between August 1, 2024, and December 31, 2024, VALDES used the @AVSRaffles and @AVSRLIVE Instagram pages to raffle numerous firearms, machine gun conversion devices, large capacity magazines, and silencers.  Photographs posted to the accounts reveal that VALDES is raffling the paraphernalia from the SUBJECT PREMISES.

## IV. **STATEMENT OF PROBABLE CAUSE**

8.    Based on my training and experience, my personal involvement in this investigation, conversations with other law enforcement officers, and my review of reports and other documents prepared by law enforcement officers, I know the following:

### A.    **VALDES offers to sell firearms to a CI**

9.    On or about August 19, 2024, an ATF CI contacted VALDES via text message to inquire about purchasing a dog VALDES had for sale.  The CI and VALDES met in person regarding the purchase.  During their meeting, VALDES offered to sell the CI firearms.  Later the same day, using the phone number (909) 704-7635[2], VALDES sent the CI pictures of firearms with prices attached.  VALDES also sent the CI a text with his Instagram handle, "@AVSraffles":

---

[2] Subscriber records indicate that the T-Mobile account associated with this phone number belongs to Rosa P Silva with the address of 3124 Jaguar Way, Apt C, Ontario, CA 91764. VALDES lists this same address on his California driver's license.

4



10.  Following their meeting, I presented a Department of Motor Vehicles photograph of VALDES to the CI, who confirmed that VALDES was the person with whom he had been communicating (and who he met in person).  The CI also provided a screenshot of a Facetime conversation he had with VALDES, which clearly depicts VALDES's neck tattoos and thus confirmed his identity.

**B.   VALDES's Instagram and Facebook Accounts Reveal He Routinely Raffles Firearms**

11.  Upon reviewing the text message conversation described above, I searched for the public profile associated with the Instagram account "@AVSraffles" and observed that the profile was being used to raffle off various pistols, rifles, large capacity magazines, and other firearm related products.  The account contained videos of VALDES handling and showcasing various weapons that were available to win in his raffle.  The

videos showed VALDES with a covering over his nose and mouth, but his neck tattoos were clearly visible and matched the tattoos visible in the screenshot of VALDES that the CI previously provided to law enforcement.

12. I also queried Facebook for VALDES's name and found that he has two public Facebook profiles. In both profiles, VALDES posts pictures and videos of himself handling firearms. For example, on July 14, 2024, VALDES posted multiple pictures to his "stories" showing Glock pistols (in what appear to be their original box) with the text "Glockboyz":



13. On November 8, 2024, VALDES posted another video depicting multiple firearms to one of the profiles. In this video one of the firearms appears to have a silencer attached to it:



**C.    Additional Records for VALDES's Social Media Accounts Confirm he is Raffling Firearms**

14.   Based on my observation of the above social media activity, on January 3, 2025, I applied for a federal warrant to search the contents of VALDES's suspected social media accounts. On January 14, 2025, the Honorable Alka Sagar, United States Magistrate Judge, Central District of California, issued a warrant in case number 2:25-MJ-00101 authorizing the search of four Meta Platforms, Inc. accounts associated with VALDES.

15.   Upon obtaining the search warrant, I reviewed records provided by Meta Platforms, Inc. for VALDES's accounts.  The records revealed that between August 1, 2024, and December 31, 2024, VALDES routinely used his social media pages to discuss and raffle off firearms.

16.  For example, on August 27, 2024, VALDES sent the following group message using one of Instagram accounts: "Nah bro u can I took all mine to the firing Range indoor they don't check shit."  VALDES then sent a picture of himself holding two firearms, with messages that read: "Los Ángeles gun club" and "Im a felon and I still went in with my own guns":



17.  The following month, on September 1, 2024, VALDES posted a photograph of himself holding an AK-47 type pistol to one of his Facebook accounts:



18. The photograph's metadata indicates that it was taken on August 8, 2024, at the latitude/longitude 33.984972222222/-117.54346388889. Using Google Maps, I confirmed that that latitude/longitude corresponds to VALDES's suspected residence (the SUBJECT PREMISES).

19. The next week, on September 8, 2024, VALDES posted an image for a raffle for a Machinegun Conversion Device ("MCD") to one of his Instagram profiles. The image depicted an MCD with the caption of "$30 an entry Don't join if you don't know what it is if you know and want in slide up." The image also displayed a grid numbered one through 20, with apparent Instagram usernames in some of the number boxes:



20. I observed numerous other posts similar to the above depicting VALDES handling and raffling off firearms.

### D.   VALDES is Raffling the Firearms from the SUBJECT RESIDENCE

21.  On September 6, 2024, VALDES posted a video of himself showcasing an AK type pistol to one of his Instagram accounts. In the video, the flooring and furniture of the room VALDES is standing in is clearly visible.

22.  On February 7, 2025, an ATF Special Agent entered the SUBJECT RESIDENCE address (5563 Lark Sparrow Ct Jurupa Valley CA 91752) into a Google search, which revealed that the property is listed as an Airbnb rental property.  Comparing photographs posted on Airbnb depicting the interior of the SUBJECT RESIDENCE to the photographs posted on VALDES's Instagram account, I confirmed that they appear to have been taken in the same place.[3]



---

[3] Based on a review of the Airbnb listing, VALDES appears to be renting a room in the SUBJECT RESIDENCE.  The Airbnb listing features a review by a user named "Alfonso" with a profile picture of VALDES.

23. On February 28, 2025, at approximately 1:30 p.m., my partner and I parked near the SUBJECT RESIDENCE to conduct surveillance. At approximately 3:03 p.m., I observed a Chevrolet Tahoe park near the SUBJECT RESIDENCE. Moments later I observed VALDES exit the SUBJECT RESIDENCE and walk towards the Chevrolet Tahoe. The driver of the Tahoe handed VALDES a plastic bag with two Styrofoam containers before VALDES walked back into the SUBJECT RESIDENCE.

24. Based on the above, I believe VALDES resides at SUBJECT PREMISES and uses it as a storing location for the firearms that he raffles off using social media platforms.

**E.    VALDES Is Prohibited from Possessing Firearms**

25. On September 2, 2024, I reviewed certified conviction documents for VALDES and discovered that VALDES has been previously convicted of a misdemeanor crime of domestic violence. Specifically, on or about November 3, 2022, VALDES was convicted of Battery on a Spouse, in a violation of California Penal Code Section 243(e)(1), in the Superior Court for the State of California, County of San Bernardino, Case Number MWV22015115.

**F.    VALDES does not possess a Federal Firearms License**

26. On October 11, 2024, Industry Operations Investigator Alberto Gomez searched the federal licensing system and confirmed that VALDES does not have a Federal Firearms License, which is required to engage in the business of dealing, importing, or manufacturing firearms.

## V. __TRAINING AND EXPERIENCE ON ITEMS TO BE SEIZED FROM A CRIMINAL'S RESIDENCE, VEHICLES, STORAGE LOCATIONS, AND PERSON__

27. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

28. Persons who possess, purchase, or sell firearms generally store their firearms, and the proceeds from their firearm sales, at various locations over which they exercise dominion and control.

29. A criminal's residence, business, storage, garage, vehicle and on their person are some of the primary locations I have found evidence of illegal firearms possession and sales. In this regard, I know that:

a. People who possess, purchase, or sell firearms often maintain evidence, including those items I have listed in Attachment B, at their residences and/or at locations of individuals they trust, so that they have fast and convenient access to items. Further, because people who possess, purchase, or sell firearms are unlikely to store the bulk of their assets in safe locations like banks, they are able to protect their assets by keeping them close at hand in places like their residences, garage, vehicles, and/or person. Additionally, people who possess, purchase, or sell firearms and those who are attempting to evade law enforcement will often utilize residences of individuals they trust. These individuals know

that locations linked to them will likely attract law enforcement.

b.    People who possess, purchase, or sell firearms maintain books, records, customer's lists, receipts, notes, ledgers (often referred to as "pay/owe" sheets) and other papers, for extended periods of time, relating to acquisition and distribution of firearms.  People who possess, purchase, or sell firearms also maintain addresses, telephone numbers, and contact information for co-conspirators.

c.    People who possess, purchase, or sell firearms often must maintain, on hand, large amounts of money to maintain and finance their ongoing criminal activity, and as a result of their ongoing firearms sales and firearms trafficking.

d.    People who possess, purchase, or sell firearms often securely store their illegal proceeds, (cash, currency and financial instruments or documents of monetary value) as well as firearms, inside a 'safe' which can be location inside of a person's residence or other area on the premises.

e.    People who possess, purchase, or sell firearms often use vehicles to transport contraband, ill-gotten gains, fruit of the crime and evidence, including the items listed in Attachment B.

f.    People who possess, purchase, or sell firearms often maintain evidence of their firearm transactions on their computers, cellular telephones, and other digital devices.  They do this because these devices can hold substantial amounts of information in very compact locations.  Further, storing

13

evidence of criminal activities on digital devices such as cellular telephones, computers, iPads etc. provides an advantage to the criminals as they are often able to lock the devices and protect the evidence of criminal activity from being observed by law enforcement officer.

## VI.   TRAINING AND EXPERIENCE ON DIGITAL DEVICES[4]

30.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.   Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are

---

[4] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

    b.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

    c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

    d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously

develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

31.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of a premises for a number of reasons, including the following:

a.  Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

32.  The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.    Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

c.    Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress VALDES's thumb and/or fingers on the device(s); and (2) hold the device(s) in front of VALDES's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

17

d.    Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. __CONCLUSION__

33.    For all the reasons described above, there is probable cause to believe that the items to be seized described in Attachment B, which constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the Business of Dealing Firearms Without a License); 18 U.S.C. § 933 (Firearms Trafficking); 18 U.S.C. § 922(g)(9) (Domestic Violence Misdemeanant in Possession of a Firearm); and 18 U.S.C. § 922(o) (Possession of a Machinegun) (the "Subject Offenses") will be found in a search of the SUBJECT PREMISES, as described in Attachment A.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 7th day of March
2025.


_____
HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE